Thank you, Your Honor. Good afternoon. May it please the court. I'm Ralph Canada, representing the appellants in this matter. I would like to reserve three minutes of my time for rebuttal. Why don't you try to help you? This appeal is from an order entered by Judge McNamee in the District of Arizona that dismissed our case without prejudice and ordered us to arbitration on an appellee's Artex and Tribeca who signed the agreements, but with all defendants. We brought this appeal arguing in five points of error, the case should not have been ordered to arbitration in the first instance. But in any event, we should not be ordered to arbitrate with a number of the non signatory defendants. And that the issue of whether the arbitration may proceed as a class action should have been left up to the arbitration panel and not decided by the court. Counselor, did you did you ask Judge McNamee for leave to amend? We did not, Your Honor. Did you make an affirmative statement that you intended to rely upon the dismissed complaint? I'm not sure I understand. Well, as I understand the case law in the Ninth Circuit, if you file a complaint and a district judge dismisses with leave to amend, and you don't seek to amend or file an affirmative statement that you're going to rest upon the complaint, then an appellate court can't review it. Well, we did neither of those things. It's my understanding, however, when we cited some case law in our opening brief, that this court has jurisdiction over a dismissal without prejudice, as well as over dismissal with prejudice. The court did not offer us leave to amend and we didn't ask for such. Okay, I've got my point. Go ahead. I want to start my argument. I apologize. I was going to mention the burden of proof. All the parties agree with two exceptions that I'll touch on during the argument, that the issues are subject to de novo review in this court. I want to start my argument with an issue that would bring the Ninth Circuit in accord with the plurality view among its sister circuits. And that is the issue of whether AAA rules delegate the question of class arbitration to the arbitrators to decide. It's our view, based on the text of the FAA, as well as the well-reasoned dissent of Judge Timkovich in the network case, that the availability of class procedures is primarily a procedural question and shouldn't be considered a gateway question. But this court does not need to reach that issue to decide this appeal if your honors join the prevailing view held by the 2nd, 5th, 10th, and 11th Circuits that the AAA rules clearly and unmistakably rebut any presumption that courts must decide class arbitration as a gateway question. Under the Brennan v. Opens case decided by this circuit, this court has already ruled that incorporating the AAA rules into an agreement constitutes clear and unmistakable intent to delegate arbitrability questions to the arbitrators. All of the questions? Yes, sir. It doesn't specifically deal with class cases. Exactly. It doesn't. What we're dealing with here, counsel, and hopefully you can help us, is you're talking about whether or not as I read the arbitration clauses themselves, there's nothing in the contract that says that that's the way it's to be handled. So we have to go back to the gateway issue that you mentioned briefly. And I just, what you're talking about, I mean, I have great respect for Judge Timkovich, but he's not a majority opinion on this, and our court has, I don't think, even resolved this gateway issue in this setting that you're talking about, have you? So this is an issue of first impression. The gateway issue is an issue of first impression. I don't think the court has to reach that, because I think what is much more clear is that a number of courts have already held that incorporating the AAA rules results in incorporating the supplementary class action procedures of the AAA, and therefore relegates the issue of class arbitrability to the arbitrators. And every circuit except one that had a pre-existing precedent like Brennan, has gone on to take that position. And in fact, the courts that have not taken that position, which would be the third, the sixth, and the eighth, two of the three of those did not have pre-existing precedent like Brennan. The eleventh circuit... I mean, you've made a very far-ranging claim that the mere reference to the AAA delegates everything on the gateway issue of the arbitrator, but what about the delegation of the specific issue of class arbitration? Are any of those cases that you refer to or have mentioned that talk about the AAA, do any of them talk specifically about a delegation of the issue of class arbitration? Yes, sir. The two that come to mind are JPEI and Spirit Airlines. But there is a case, the Dish Network case from the 10th Circuit as well. So there are cases from each of the four circuits I named that specifically say when you delegate, sorry, when you incorporate AAA rules, that also brings forward the supplementary rules. And so the issue of class arbitrability goes to the arbitrators. Now, several circuits have disagreed, but there's a plurality at this point of the circuits. And given this court's precedent in Brennan, at least according to the 11th Circuit, that sort of precedent forecloses coming out with any different result than the class arbitrability as well should go to the arbitrators. Wait a minute, you're saying that case law from other circuits, in effect, binds us on whether we would agree with the concept that a reference to AAA solves the class arbitrability issue? No, sir. No, sir. I didn't mean to say that. If I did, what I was saying was the Brennan v. Opus precedent, which says that incorporation of the AAA rules, reference to AAA or AAA rules, mandates that incorporates the AAA rules and that arbitrability is therefore to go off to the AAA, that that precedent, according to the 11th Circuit, and we would argue the same here, mandates that this court should also find that class arbitrability go off as well. It should be treated in the same manner. Number one, if we agree with the 11th Circuit and if we agree that it specifically covers class arbitration, right? Right. I don't think there's any doubt. The AAA rules generally say, here, there were no specific rules cited, so you look to the commercial arbitration rules, which say they apply to fill that gap. Those rules specifically say the arbitrator has the ability to judge his own jurisdiction, and the supplementary rules, which are incorporated, specifically say the first thing the panel should do is if there is a class demand, they should write a reasoned opinion as to whether the parties can proceed with a class action or not. So what was the underlying support for Judge Tymkiewicz's concurrence? What does he base his concurrence on? In essence, you want to make this default to AAA, overcome what seven circuits have said about class arbitration being a gateway issue. Well, no. I mean, Your Honor, respectfully, even those circuits that say class arbitration is a gateway issue still leave open the possibility that the parties may agree otherwise. And what I'm saying is the parties here agreed otherwise, by specifying the AAA rules, by specifying the AAA in the contract. But none of the contracts say that class arbitration issues would be decided by an arbitrator, do they? No, sir. There's no specific language, but there wasn't in most of those other cases I was talking about as well. And again, we say that's the logical import of Brennan as applied to this situation. But you know, there is no specific language on class arbitrability in the contract. I'd like to move on to a couple of other issues. One is we asserted that the contract or the arbitration clause should be vitiated due to our due to a breach of fiduciary duty in reliance on the Rippey case out of Arizona that says once there's a fiduciary relationship established, a fiduciary must point out and explain an arbitration clause. And in that case, when they failed to do so, the cat court found that the arbitration clause was void as though it was fraudulent. Here, as you know, that Codd versus Rippey doesn't bind us here, but aren't you in exactly the same position as the plaintiff in Duenas versus Life Care Centers of America? Well, we don't think so. First of all, we think here the fiduciary duty was created before the agreement. We're not trying to rely on an agreement. And it encompassed these folks not only setting up these captive insurance arrangements, but performing a feasibility study, forming all of the necessary entities, managing everything, arranging for insurance at a substantial cost, $40,000 up front and $30,000 per year, all of which was to be taken directly out of bank accounts that we created. Did the bank assume there was a fiduciary duty and ruled against you anyway? Well, he said he wasn't going to decide if there was a fiduciary duty at some point. He assumed it for purposes of the discussion. Well, we believe he misunderstood our argument that the fiduciary duty was created prior to the contracts being formed. So there was no effect of the contracts, and we had an existing fiduciary duty based on the provision of and trust, which we demonstrated with 12 affidavits in the trial court, and the defendants offered no evidence at all rebutting that there was a fiduciary duty or that they had ever explained. I'd like to hit one other point before I stop and save the rest of time for rebuttal, which is the alternative estoppel argument. Arizona's equivalent of equitable estoppel, and we specify in our brief eight of the non-signatories who we don't believe meet either portion of the test. As your honors are no doubt well aware, to establish equitable estoppel or alternative estoppel, the non-signatory defendants must prove either they have a sufficiently close relationship to the signatories, that only by permitting the non-signatory to invoke arbitration can the arbitration agreement be recognized, or that plaintiffs must rely on the agreement terms to prosecute all of their claims. Let's just say, arguable, that we agree with you. What would we end up doing? Would we reverse in part, order a stay of your claim against the non-signatory defendants, pending a resolution of the case? That's exactly what would happen, and so we believe their failure to demonstrate either of those elements under Arizona law means that that's exactly what the court should do, and we think that is subject to a de novo review. The other side argues it's subject to an abuse of discretion, but we think the remainder of my time. Very well, thank you. Okay, let's see, Mr. DeMori and Mr. Tillman. I guess Mr. DeMori, you're starting, right? I am, your honor, and may it please the court, and good afternoon again. I'm Steve DeMori. I'm arguing for all of the appellees and yielding two minutes of time to Mr. Tillman to address one issue relating to equitable estoppel. Your honor, in many ways, the district court's order and the appellant's arguments here are studying contrasts in that the district court ordered enforcement of the arbitration agreement as written, and the appellants seek to retreat from it. We started with opposing counsel addressing the issue of class versus individual arbitration. Your honors, there is no doubt that the question of whether an arbitration agreement provides for class arbitration, there's no doubt that is a gateway issue. That has been the unanimous ruling of all of the circuits that have ruled on that issue. The fifth, the seventh, the eleventh, the third, in an opinion by Judge Ambrose, and even this court in an unpublished order called Esau versus Terminix found that the issue of class arbitrability is a gateway issue. So there's no doubt about that, and I don't believe that's actually what the appellants are arguing. What the appellants are arguing is that even though it is a gateway issue, it must still go to the arbitrator to decide whether class arbitration is appropriate. Now, the law on that is very clear. If something is a gateway issue, it is presumptively for the court to decide, and that's because in the case of class arbitrations, the differences between class arbitration and binary arbitration are so significant, as the Supreme Court has now said repeatedly, so significant that it's really an issue for the court unless there is a clear and unmistakable expression of intent by the parties to delegate that gateway issue to the arbitrators. The courts refer to it as having to leave no doubt about the party's close to meeting the standard of a clear and unmistakable intent to delegate, to wrest away that gateway issue from the court. As your honors have noted, the agreement itself, which is a very short and simple agreement, the arbitration provision is stated in three sentences, says nothing about class arbitration. It uses singular terms that refer to binary arbitration, and there is no indication of any intention to delegate the question of arbitrability to the arbitrators. Now, what counsel argued is that the incorporation of the AAA rules is a clear and unmistakable indication of intent to delegate class arbitration to the arbitrators. Now, there are several problems with that argument. The first is that this arbitration agreement does not explicitly incorporate the AAA rules. It simply does not. That makes it unlike all of the cases that counsel was referring to, including, unlike this court's decision in Brennan, which expressly adopted the AAA rules. Brennan also did not involve a class arbitration decision, so it's distinguishable on that ground as well. But here, the AAA comes into play only as a backup contingency in a potential second round of dispute resolution. The way this arbitration provision works, and I should call it a dispute resolution provision, because it says in the first instance, disputes will be resolved by mediation. If that fails, it will be resolved by arbitration using an arbitrator selected by the parties. And only if that fails, if the parties are not able to select an arbitrator, then the AAA becomes involved. But there is no incorporation of the AAA rules. There's not even an intention measured at the time of making the contract that AAA will become involved at all. It's quite possible that it will not. That cannot satisfy the standard articulated by all of the circuits that have addressed the issue of a clear and unmistakable intent to delegate the issue of class arbitrability to an arbitrator. It simply doesn't meet that standard. And so, we never have to get to the issue of a split about whether incorporation of the rules satisfies that standard. Here, there is not incorporation of the rules, and here, the issue is left for the court. And here, the district court, Judge McNamee, correctly decided that there was no intent demonstrated to permit class arbitration. The Supreme Court has addressed this issue several times, and it has said that we may not infer consent to arbitrate as a class unless there is an affirmative contractual expression of intent to do that. Silence is not enough. That's the Stolt-Nielsen case. Ambiguity is not enough. That's the LAMPS Plus case. And here, we have silence. And so, there is absolutely nothing indicating an intent to permit class arbitration. And under the Supreme Court's decision, Stolt and LAMPS Plus, the district judge correctly decided that that means that the default of binary arbitration applies. Now, let me move to another issue, and that is the question of fiduciary duty. Now, Your Honor, Judge Smith, I think you're absolutely right in saying that the plaintiff appellants here are in the same position as the parties in the Duenas case. In fact, the position here for the defendants is slightly better than the Duenas case, because in the Duenas case, that involved nursing home services, where the court says, even if we accept that there is a heightened duty with respect to the provision of nursing home services, that doesn't automatically carry over into all of the commercial aspects of the confidential information or the disproportionate familiarity with issues relating to captive insurance. That has nothing to do with whether there is a fiduciary duty with respect to the agreement to arbitrate. It's a simple agreement. It's three sentences contained in a contract, which is eight pages long. We're dealing with sophisticated business entities and parties on to suggest that Mr. Shivkoff, who is himself a business owner, or our clients who ran captive management business, are any more sophisticated than the other with respect to arbitration agreements, which appear in so many different kinds of contracts. There is no basis to say, by contract or otherwise, that a fiduciary duty was created here in this commercial transaction. The law tells us that in order to find a fiduciary duty in the context of a commercial transaction, there must be some assumption of that duty in the contracts. Here, there's nothing like that. In fact, we have quite the opposite. In this short agreement, the contracts essentially disavow the creation of that kind of a heightened duty. For example, referring to the record at E263, this is part of the contract, it says that you acknowledge that we have encouraged you to consult with your own attorneys, accountants, and advisors prior to entering into this agreement. It says that you have had ample opportunity to do so. You acknowledge and we recommend that you consult with other professionals and advisors regarding the appropriateness, terms, and conditions of this contract. In the strongest and clearest possible terms, Mr. Shivkoff and the other plaintiffs were being told to seek their own counsel with respect to entering into this agreement. Finally, with respect to the declarations that counsel referred to, I'm glad counsel pointed that out because the district court did review those declarations. What those declarations show is nothing at all relevant with respect to entering into the arbitration agreement. In fact, the declaration of Mr. Shivkoff, which is highlighted in the appellant's brief, shows that he was in possession of a partially executed form of the engagement letter for three weeks before he signed it. That's the letter that encouraged him to get counsel. The record showed that Mr. Shivkoff had counsel involved who was asking questions about other aspects. The declaration is speculative at best. It speculates that he assumed the agreement was non-negotiable. That doesn't matter even if it were true in a commercial agreement like this. It says that he possibly would not have signed it if it had been explained to him or he had been seeking counsel on it. There is nothing there to raise a sufficient, reliable basis to suggest that there was anything untoward about the engagement relating to the contract. Counsel, your opponent suggested when I asked him whether Judge McNamee had assumed for purposes of making his decision that there was, in fact, a fiduciary duty of some type, but even having done that, it had no impact in this case given many of the things that you have just talked about. Your opposing counsel said, well, he just didn't understand. We were talking about pre-contract formation fiduciary duties. Would you address that for a minute? Is there any substance to that? I don't think so, Your Honor. I think it's correct that Judge McNamee assumed arguendo that a fiduciary duty might arise in order to take that issue essentially off the table. He said that even if that were true, it did not apply to the commercial aspects of the arrangement, the relationship between the parties with respect to the arbitration clause. That goes directly to what counsel was arguing about. Even if some work relating to the formation of the captives was done before the engagement agreement was signed, Mr. Schiffcott had it in his possession for three weeks. Even if some work on the insurance issues was done, there is nothing that occurred during that time that would suggest that any fiduciary duty was created with respect to the agreement to arbitrate, which raises no special issues, which raises no heightened duties. It's really just a red herring, Your Honor. This is a commercial agreement and there is nothing to suggest anything on toward giving rise to a special duty, a special relationship that would create a fiduciary duty with respect to the arbitration clause. But Your Honor, there's no Arizona case law that would say to the contrary, right? I believe that's correct, Your Honor. I believe that's correct. Your Honors, subject to any questions that you may have for me, I'm going to yield the balance of my time, a little more than two minutes to Mr. Tillman to address the issue of equitable stop. Thank you, Your Honors. Thank you. Judge Smith and Judge Fischer and Judge Hawkins, may it please the court. Briefly, I would like to address the equitable estoppel, the alternative estoppel argument. The appellants have recognized that the Arizona case that governs this is the Sun Valley Ranch versus Robinson case, which the district court cites and relies upon at page 22 and 23 of its opinion. I just want to note that the Sun Valley takes a look first at the relationship between the parties. Is it sufficiently close to say that the arbitration provision has to be utilized against all of them or it will be eviscerated? And the second one is the nature of the claims. Your Honors, I think it's critical that the plaintiffs have already conceded on appeal for the first time that four of the 12 non-signatories, that their claims should be arbitrated. If the claims for Artex and Tribeca, the signatories should be arbitrated. They just move those over. And they say they're because they're officers and owners of a company, but there's not even an alter ego allegation. That being the case, there is no equitable way for the court to look at either of the Sun Valley factors and say that they apply to the other eight non-signatories. First of all, with respect to the claims, it's hard to overemphasize the nature of the claims. They say that in many of the instances, they're entitled to the fees back from those agreements. Well, that puts at issue the agreement. Second, with respect to- Since we have so little time, what is your strongest argument for why we should conclude that all the non-signatory defendants can compel arbitration of the plaintiff's claims? Say that it's a tie between the first and second factors in Sun Valley. But I would just say, clearly the relationship between the parties here, they are alleged that they're in no way independent from each other. They're alleged that without the entire conspiracy and everyone's contribution, no claims against any of the defendants will prevail. And they say that all of the defendants are responsible, all of the appellees are responsible for each other's conduct. They allege that several times with the complaint that when one defendant acted, it acted on behalf of the whole. So, Your Honor, I think that would be the most persuasive argument. Very well. Oh, yeah. You're a little over time. Do either of my colleagues have questions for either Mr. DeMora or Mr. Tillman before we get back to Mr. Canada? I do not. Okay. Thank you, gentlemen. Mr. Canada, you have a little bit of remaining rebuttal time. Would you like to use that now? Yes, sir. Please do. To go in reverse order, on the equitable estoppel claim, I'd simply point out the argument these folks have been making is essentially that we alleged a conspiracy and that was enough for equitable estoppel. And it just simply doesn't meet the test. As to the class arbitrability, there wasn't silence in the contract. The contract specifically refers to the American Arbitration Association. And we cited the Belknap case out of the 10th Circuit, which deals with almost identical language, although it involves a jams proceeding. The court then said the reference to the proceeding before jams was the default controlling rubric. And the same would be true here. Mr. Canada, as you know, as Mr. DeMora mentioned, that the way the contract itself is actually worded, you start off with mediation. If that's not successful, then you go to the arbitration clause. And if that's not successful, then you How does that fit in with your conception of the, as you see it, the essential role of AAA arbitrability as somehow giving specific license to arbitrate the class actions in arbitration? Well, I think just like in Belknap, which had mediation, then jams, then the potential for an agreement to do something else. And the court said, we're going to apply the jams rules because at the time the parties contracted, they all understood that in the absence of an agreement to the contrary, those were the rules they were arbitrating under. I think the same is true here of the AAA rules. Okay. Do either of my colleagues have additional questions for Mr. Canada? No. I have none. Okay. Well, thanks to all counsel for your very interesting and helpful arguments in this very interesting case. The case of Shercoff versus Artec Risk Solutions is submitted. And we thank you and we will wait for our tech people to move us to the next argument, which is Simmons versus Safeway. Thank you, Your Honor.
judges: Fisher, Hawkins, M. Smith